**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>NANCY JEAN SERWIN,<br><br>Debtor. | Case No. 08-28743<br>Chapter 11<br><br>(Hon. Deborah L. Thorne) |
| NJS LIQUDATING TRUST,<br>By its trustee, Christopher Stroebel,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS JOHN PEYTON,<br>PEYTON & ASSOCIATES, and<br>AISLING CHEM INC., S. DE R.L. DE C.V.,<br><br>Defendant. | Adversary Pr. No. _____________ |

**COMPLAINT**

Plaintiff NJS Liquidating Trust (the "Trust"), by its trustee, Christopher Stroebel (the "Trustee"), and by and through its attorneys Thomas D. Rosenwein of Rosenwein Law Group and Christopher Stroebel of Stroebel Law, LLC, for its complaint against Defendants Dennis John Peyton, Peyton & Associates and Aisling Chem Inc., S. de R.L. de C.V., alleges as follows:

NATURE OF THE ACTION

1. This is a declaratory action concerning controversies arising from the involvement of Trust's former attorneys, Dennis John Peyton and his law firm, Peyton & Associates (together, "Peyton"), in several conflicts of interest that have affect the implementation and administration of the First Amended Plan of Reorganization (the "Plan") of the Nancy J. Serwin (the "Debtor").

2. Both during and after their representation of the Trust, Peyton acted in concert with an affiliated entity, Aisling Chem Inc., S. de R. L. de C.V. ("Aisling Chem"), to defraud the Trust by inducing it to enter into a fake loan transaction purely for Peyton's benefit, putting Peyton's interests ahead of the Trust and its beneficiaries.

3. In an effort to avoid scrutiny, Dennis Peyton abused a limited power of attorney granted to him by the Debtor in 2017 to deprive the Debtor of proper notice of an ancillary bankruptcy proceeding filed in Mexico more than five years later.

4. Peyton failed to apprise the Trustee of the nature of the Mexican bankruptcy proceeding, the Trustee to believe that the proceeding could be used to obtain possession of the real properties in which the Trust has an interest (the "Mexican Properties"). Peyton also failed to keep the Trustee apprised of developments in the Mexican proceeding concerning the sale of the Mexican Properties.

5. Furthermore, Peyton failed to notify or consult with the Trustee about a request from the Mexican bankruptcy court in late January 2025 for a report about the status of Aisling Chem's lien on the Mexican Properties and whether it has a claim against the Debtor. Instead, Peyton misrepresented to the Mexican court that "all parties are in communication" and "there is mutual agreement that the debt is $200,000.00."

6. On February 5, 2025, the day after he made the above misrepresentations to the Mexican court, Dennis Peyton repudiated the terms of Peyton's representation of the Trust by demanding that the Trust pay expenses previously paid by Peyton & Associates, and by "requesting" the "immediate" payment of all outstanding expenses. Peyton was fully aware that the Trust had no funds to pay the claimed expenses and that Peyton's demands violated the terms of his representation in which payment was contingent upon the sale of the Mexican Properties.

7. As a result of Peyton's repudiation of the terms of his representation, the Trust terminated his representation on February 5, 2025.

8. Subsequently, on July 25, 2025, Peyton acted in concert with Aisling Chem to interfere with the administration of the Trust by filing a motion in the Mexican bankruptcy proceeding in Aisling Chem's name seeking to revoke the Trustee's appointment as the foreign representative of the Trust.

9. The Trust is seeking declaratory relief to resolve controversies affecting the implementation of the Plan, including: Peyton's conflicts of interest; the terms of Peyton's representation of the Trust; the parties' respective obligations following the termination of Peyton's representation; and the validity of Aisling Chem's claim, including its asserted lien interest in the Mexican Properties.

10. In connection with the request for declaratory judgment, the Trust is seeking njunctive relief necessary to prevent further interference by Peyton and Aisling Chem in the implementation and administration of the Plan, and such further relief as would be necessary or proper.

## PARTIES

11. Plaintiff, the NJS Liquidating Trust, is an Illinois trust created in 2010 under the Debtor's First Amended Plan of Reorganization, confirmed in 2010 by the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. The Trustee is a citizen of the United States and the State of Wisconsin, with a current domicile in Madison, Wisconsin.

12. Defendant Dennis Peyton is a citizen of the United States and the State of California with a current domicile at 1240 Indian Creek Dr., Chula Vista, CA 53711.

13. Defendant Peyton & Associates a/k/a Peyton and Associates a/k/a Law Mexico is a sole proprietorship law firm operating in California and the State of Baja California, Mexico. Peyton & Associates holds itself out as having an address at 2220 Otay Lakes Road, Suite 502-110, Chula Vista, CA 91915. Dennis Peyton is the principal of Peyton & Associates.

14. Defendant Aisling Chem Inc., S. de R. L. de C.V. ("Aisling Chem") is a Mexican limited liability company with variable capital. On information and belief, all members of Aisling Chem are residents of the State of Baja California, Mexico. On information and belief, Aisling Chem's current address is Agua Caliente Boulevard, number 9955, Torela A building, 5th floor, Calette neighborhood, Zip Code 22044 in the city of Tijuana, Baja California, behind the City Express Hotel.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1334(b) because the disputes at issue in this proceeding, although non-core, nevertheless affect the implementation of the Plan and the Debtor's legal title to beneficial interests in the Mexican Properties. Due to the limited nature of the Mexican bankruptcy proceeding, the Mexican bankruptcy court is unable to adjudicate the parties' claims and property rights; therefore, the parties respectfully acknowledge that these matters are properly before this Court for adjudication.

16. The Court has personal jurisdiction because this action arises out of Dennis Peyton's activities in this district on behalf of himself and his law firm, Peyton & Associates. Dennis Peyton has filed a flurry of papers in this case availing himself and Peyton & Associates on this Court in an attempt to avoid or forestall accountability for a fraudulent scheme carried out by Peyton and Aisling Chem.

17. Furthermore, Peyton & Associates conducts a substantial part of its business in the United States, with a domestic telephone number and mail address. The written and telephonic communications between Peyton & Associates and the Trust from 2017 to 2025 were almost entirely if not entirely domestic, with communications made to and originating from San Diego County in Southern California, where Dennis Peyton resides and Wisconsin, where the Trustee resides. Dennis Peyton, the owner of the firm, works from his home in Chula Vista, California.

18. Peyton & Associates' website is in English and the firm's business is directed toward the United States. Peyton & Associates describes itself as "American Attorneys Licensed in Mexico." According to the firm's website, Peyton & Associates provides services "to meet the needs of Americans in Mexico."

19. As further alleged below, Aisling Chem conspired with Peyton, or allowed itself to be used as an instrumentality of Dennis Peyton, or otherwise knowingly allowing Peyton to act on its behalf as its agent, in a scheme to defraud the Trust by inducing it to enter into a bogus loan transaction.

20. Dennis Peyton made misrepresentations to the Trust on behalf of Aisling Chem and in furtherance of the conspiracy that Aisling Chem was making a loan that would pay for expenses incurred by the Trust in connection with obtaining possession, maintaining and selling the Mexican Properties.

21. In connection with the fake loan, and based on Peyton's false representations on behalf of Aisling Chem, the Trust wired $10,000 in purported "loan fees" to a domestic bank account in Chula Vista, California. On information and belief, Dennis Peyton took the funds for his own use.

22. No advances were ever made to pay for expenses incurred by the Trust and no funds were ever disbursed under the fake loan. In actuality, the loan was a scheme to enable Dennis Peyton to obtain a lien on the Mexican Properties to secure Peyton and Associate's fees.

23. The two persons holding themselves out as the manager of Aisling Chem in the bogus loan transaction, Laura Gomez Espinosa and Jennifer Angélica López, are each employees of Peyton & Associates. These employees communicate with and are directed by Dennis Peyton. The documents for the fake loan provide a notice address for Aisling Chem in Chula Vista, California.

24. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in and relates to a bankruptcy case pending in this district.

## FACTUAL BACKGROUND

25. The Court confirmed the Plan in this case in 2010. The Plan created the Trust to liquidate property contributed by the Debtor, Nancy Serwin.

26. In 2017, at the time the current Trustee was appointed, the only remaining assets in the Trust were dwindling cash reserves and the Debtor's beneficial interests in the Mexican Properties, two adjacent ocean front properties on the Caribbean coast of the Yucatan peninsula in Akumal, Mexico. One of the properties is a large house known as "Casa Magna." The other parcel is an undeveloped "garden lot."

27. Under Mexican law, any foreign ownership interest in the Mexican Properties is limited to a beneficial interest under a land trust administered by a Mexican bank. ScotiaBank Inverlat is the trustee under the land trusts for the Mexican Properties.

28. At the time of the confirmation of the Plan, the beneficial interests in the Mexican Properties were titled in the Debtor's name.

29. Even though the Plan requires the transfer of the Debtor's beneficial interests in the Mexican Properties to the Trust, no transfer has occurred. The Debtor continues to hold legal title to the beneficial interest in the Mexican Properties and will probably continue to do so until the time of their sale. Nevertheless, the Plan contemplates the sale of the Mexican Properties and the use of the net proceeds from the sale to make distributions to creditors on their claims.

30. In February 2017, the Trust hired Peyton (Dennis Peyton's firm, Peyton & Associates) to represent it in Mexico.

31. Beginning in August 2017, an employee of the Debtor's property management company, Gabriella Orvañanos, refused to provide access to the Trust's agents to the house. Since that time, if not earlier, Orvañanos has refused to turn over possession of Casa Magna to the Trust.

*The Terms of Peyton's Representation*

32. Beginning in mid-2018, Peyton began representing the Trust on a contingency basis. Peyton agreed to diligently seek to recover possession of the Mexican Properties and represent the Trust through their sale. Peyton also agreed that Peyton & Associates would cover expenses incurred in Mexico during his firm's representation (other than insurance premiums for the Mexican Properties, which the Trustee paid).

33. Among other expenses, Peyton & Associates have prepared all translations of documents to be presented in Mexico during the course of Peyton's representation of the Trust.

34. Under the parties' agreement, Peyton & Associates would be paid upon the successful completion of the sale of the Mexican Properties.

35. The Trust would not have continued with Peyton but for Peyton & Associates' agreement to cover legal expenses. This has been the parties' course of dealing ever since mid-2018.

*The Bogus "Loan" Transaction*

36. In 2018, the Trust was seeking a loan to pay for the anticipated expense of maintaining and selling the Mexican Properties. Dennis Peyton presented Aisling Chem to the Trust as a party that would loan money to the Trust for various expenses in obtaining possession of, maintaining and selling the Mexican Properties.

37. In actuality, the so-called "loan" was a scheme by Peyton to benefit themselves by securing payment of Peyton & Associates' fees.

38. The purported loan transaction was fraudulent. No money ever changed hands, other than the Trust's payment of $10,000.00 in what were misrepresented a "loan fees."

39. On information and belief, the payment for the purported fees went to Peyton and was used by Peyton.

40. Peyton misrepresented the transaction to the Trust with the intent of inducing the Trust to enter into the transaction for Peyton's benefit.

41. The Trustee entered into the loan transaction in late April 2019. The Trustee signed a promissory note and entered into a "line of credit loan agreement" and agreed to the terms in the loan documents based on Peyton's representations that Aisling Chem had the ability to make the loan and would advance funds to the Trust to pay expenses relating to the Mexican Properties as they arose.

42. The Trustee reasonably relied on Dennis Peyton in entering into the loan transaction, believing that funds would be made available to pay for expenses relating to the Mexican Properties.

43. Additionally, the people holding themselves out as Aisling Chem's "manager" or "representative" are each employees of Peyton & Associates, under Dennis Peyton's supervision

and control. Peyton did not disclose this relationship to the Trustee. The Trustee only discovered this relationship years later, after hiring independent counsel.

44. Peyton acted in concert and conspired with Aisling Chem to induce the Trust to enter into a fraudulent loan for Peyton's advantage.

45. Peyton and Aisling Chem acted pursuant to an agreement in furtherance of the fraudulent loan scheme.

46. Alternatively, Peyton used Aisling Chem as an instrumentality, exercising control over it in promoting and entering into the fraudulent loan transaction.

47. Alternatively, Aisling Chem knowingly allowed Peyton to act on its behalf in inducing the Trust to enter into a fraudulent loan transaction.

48. Peyton's actions violated his ethical and fiduciary duties to the Trust.

49. Because the loan transaction and all terms of the promissory note and credit agreement were induced through fraud, they are null, void and of no effect.

*The Mexican Bankruptcy Proceeding*

50. In 2022, after failing to obtain possession of the Mexican Properties let alone sell them, the Trust commenced a "federal proceeding" in Mexico. The commencement of the proceeding was prompted by a state court filing based on an invalid instrument purporting to transfer the beneficial interest in the Mexican Properties in 2011. The Trustee later learned that the federal proceeding was an ancillary bankruptcy proceeding.

51. The Trustee understood that the Trust would not only be able to continue its efforts to obtain possession of the Mexican Properties in the ancillary proceeding but that the commencement of the proceeding would facilitate those efforts. This turned out to be untrue.

52. In actuality, as the Trustee later learned after hiring independent counsel, the Mexican bankruptcy proceeding is a foreign non-main proceeding of the Debtor without an establishment in Mexico. As such, the Mexican bankruptcy court is unable to determine creditor rights.

*Peyton's Repudiation of Their Representation of the Trust*

53. In fall 2024, due to concerns about the ongoing lack of progress in the Mexican bankruptcy proceeding and uncertainty about the prospects for a sale of the Mexican Properties, the Trust hired independent counsel for the purpose of reviewing the ancillary bankruptcy proceeding and making recommendations about the possession and sale of the Mexican Properties.

54. Peyton initially refused to cooperate with an independent review of the proceeding.

55. The Trust's independent review turned up significant improprieties by Peyton.

56. Among other irregularities, Peyton had failed to provide proper notice to the Debtor of the ancillary bankruptcy proceeding in Mexico.

57. Peyton abused a limited power of attorney granted by the Debtor back in 2017 by using the power of attorney to designate an employee of Peyton & Associates as the Debtor's agent for receiving notice in the Mexican bankruptcy proceeding. Neither Dennis Peyton nor the appointed agent for service (the employee) informed the Debtor of these steps or events in the bankruptcy proceeding. As a result, the Debtor didn't receive notice of the Mexican bankruptcy proceeding or events during the proceeding.

58. Additionally, in late January 2025, the Trustee learned from independent counsel that the bankruptcy trustee in the ancillary bankruptcy proceeding had proposed a public auction of the Mexican Properties. Peyton did not inform the Trustee of this development.

59. When the Trustee inquired with Dennis Peyton in early February about the proposed sale and other recent filings in the bankruptcy proceeding, Dennis Peyton did not disclose that he was filing any sort of request or motion for sale of the properties, or the substance of any such request.

60. Peyton also failed to disclose that the court in Mexico had requested a report as to whether Aisling Chem was a creditor of the Debtor and, if so, how it would be paid. Without consulting with or notifying the Trustee, Peyton informed the Mexican court on February 4, 2025 that "all parties are in communication" and "there is mutual agreement that the debt is $200,000.00." These were false representations, made without the Trustee's knowledge or consent.

61. That same day, February 4, 2025, Dennis Peyton informed the Trustee that he would be seeking compensation from the Trust.

62. Then, on February 5, 2025, Dennis Peyton sent the Trustee two emails repudiating the terms of Peyton's representation of the Trust.

63. In the first email, Dennis Peyton refused to incur additional expenses in representing the Trust. Dennis Peyton wrote, "Please have this translated and apostatized. I will not be paying more expense for this case."

64. In the second email, Dennis Peyton "requested" that the Trust "immediately" reimburse all out-of-pocket expenses incurred by Peyton. Dennis Peyton wrote, "I have paid $92,567.41 dollars to date to the benfit [sic] of the liquidation trust. I am hereby requesting that I be reimbursed immedately [sic]. Please let me know how you would like to proceed."

65. Denis Peyton's "request" could only reasonably be understood to be a demand, one that was not made in good faith. He was well aware that the Trust had no cash to pay his firm and that he had agreed that his firm would be paid only upon the closing of the sale of the Mexican Properties.

66. That same day, February 5, 2025, following the receipt of Dennis Peyton's emails, the Trust terminated Peyton's representation.

67. On February 6, 2025, in a letter to Mr. Peyton care of Thomas Drexler, an Illinois attorney that Mr. Peyton had hired, the Trust confirmed the termination of representation.

*Defendants' Ongoing Interference with the Administration of the Trust*

68. On February 5, 2025, The Trust also terminated the power of attorney granted to Mr. Peyton and employees of his firm for the purpose of representing the Trust in the ancillary proceeding.

69. Upon terminating Peyton's representation, the Trustee directed Dennis Peyton to: (i) immediately notify the Mexican bankruptcy court that his representation had been terminated; and (ii) immediately notify all persons who had granted him with a power of attorney in connection with his representation of the Trust, including the Debtor and the trustee of the Mexican land trust, ScotiaBank, of the termination of his agency.

70. Contrary to the Trustee's instruction, Peyton failed to notify the Mexican bankruptcy court of their withdrawal as counsel for the Trust.

71. This was a violation of Peyton's fiduciary and ethical duties to the Trust.

72. Dennis Peyton has also failed to notify the persons who had appointed him power of attorney (including the Debtor and ScotiaBank) that he no longer represents the Trust and no longer acts as their agent.

73. This was a further violation of Dennis Peyton's ethical and fiduciary duties to the Trust and his duties to the principals who appointed him as their agent.

74. In a letter sent to Dennis Peyton on August 1, 2025, the Trustee directed him to immediately return of the power of attorney that the Trustee granted to him, along with all other

documents evidencing his appointment, and further directed him to immediately return all other documents relating to the Trust, including all other powers of attorney granted in the course of his representation.

75. As of the date of this filing, Dennis Peyton has not complied with the Trust's demand for the return of all powers of attorney and other documents relating to the Trust.

76. Following the Trust's termination Peyton's representation, rather than safeguard the Trust's interests, Peyton acted individually and in concert with Aisling Chem to forestall or avoid accountability for their fraud and misconduct.

77. Peyton filed papers with this Court intended to create confusion concerning the termination of his representation.

78. Peyton could have notified the Mexican bankruptcy court at any time following their termination that Dennis Peyton and Jaime Iván Bonilla (an employee of Peyton & Associates who had appeared in the Mexican proceeding) no longer represented the Trust. Peyton failed to do this.

79. These were further violations of Peyton's legal, ethical and fiduciary obligations to the Trust.

80. On July 25, 2025, Peyton acted in concert and conspired with Aisling Chem to disrupt the administration of the Trust for Peyton's advantage by filing a motion in the Mexican bankruptcy proceeding in Aisling Chem's name seeking to revoke the Trustee's appointment as the foreign representative of the Trust.

81. Peyton either filed or assisted Aisling Chem (through Peyton and Associate's employee, who acted on behalf of Aisling Chem) in filing the motion to revoke the Trustee's appointment.

82. Alternatively, Aisling Chem knowingly allowed itself to be used as an instrumentality of Peyton in filing the motion to revoke the Trustee's appointment.

83. The motion made the same unfounded accusations against the Trustee that Peyton was making before this Court at the time.

84. This was a further act by Peyton and Aisling Chem pursuant to their agreement and their fraudulent scheme to secure Peyton's fees with the Mexican Properties or otherwise advance Peyton's claims against the Trust.

85. In so acting, Peyton violated their ethical and fiduciary obligation to the Trust to end their representation without causing harm to their client.

86. Peyton further violated their ethical obligations to the Trust by repeatedly disclosing confidential attorney-client communications following the termination of their representation.

## COUNT 1:
## Declaratory Judgment against Peyton

87. The Trust re-alleges and incorporates by reference the allegations in the above paragraphs as if fully restated here.

88. Peyton violated their ethical and fiduciary duties to the trust and breached the terms of their representation by, among other things:

- engaging in self-dealing and defrauding the Trust by inducing it to enter into a fake loan transaction purely for Peyton's benefit;
- abusing a limited power of attorney granted to him by the Debtor in 2017;
- failing to keep the Trustee apprised of the nature of the Mexican bankruptcy proceeding and steps by the Mexican bankruptcy trustee to sell the Mexican Properties by public auction;

- failing to notify or consult with the Trustee and making misrepresentations to the Mexican bankruptcy court concerning Aisling Chem's claim and lien; and

- failing to withdraw from representing the Trust in a manner that safeguarded the Trust's interests.

89. On February 5, 2025, the day after he made the above-referenced misrepresentations to the Mexican court, Dennis Peyton repudiated the terms of Peyton's representation of the Trust by demanding that the Trust pay expenses previously paid by Peyton & Associates, and by "requesting" the "immediate" payment of all outstanding expenses.

90. Dennis Peyton's demands were not made in good faith. Peyton was fully aware that the Trust had no funds to pay the claimed expenses and that the payment demands violated the terms of their representation, in which payment was contingent upon the sale of the Mexican Properties.

91. Peyton materially breached and repudiated the terms of their representation of the Trust.

92. As a result of Peyton's material breach and repudiation of the terms of their representation of the Trust, the Trust terminated Peyton's representation on February 5, 2025.

93. As a result of Peyton's material breach and repudiation of the terms of their representation of the Trust, and the Trust's termination of their representation, the Trust has no further obligations to Peyton.

94. An actual controversy exists concerning Peyton's asserted rights and interests, including their claims concerning the status of their representation of the Trust following the Trust's termination of their representation, and the effect of termination.

95. The Trust is entitled to a declaration that the Trust properly terminated Peyton's representation and has no further obligation to Peyton.

**COUNT:2**
**Declaratory Judgment against Aisling Chem**

96. The Trust re-alleges and incorporates by reference the allegations in the above paragraphs as if fully restated here.

97. Peyton conspired with Aisling Chem to interfere with the administration of the Trust in furtherance of their fraudulent loan scheme. Alternatively, Peyton assisted or acted as the agent for Aisling Chem, or otherwise used Aisling Chem as an instrumentality, in interfering with the administration of the Trust.

98. Dennis Peyton made false representations to the Trustee concerning Aisling Chem and the loan transaction with the intention of inducing the Trust to enter into a bogus loan transaction.

99. The Trust reasonably relied on Peyton's false representations in entering into the bogus loan transaction.

100. Because the loan transaction was induced through fraud, it is null, void and of no effect.

101. An actual controversy exists concerning Aisling Chem's asserted rights and interests, including its claim and asserted lien interest in the Mexican Properties.

102. The Trust is entitled to a declaration that the loan transaction, including the debt and lien interest asserted by Aisling Chem in the Mexican Properties, is null, void and of no effect.

**COUNT 3:**
**Injnuctive and Further Relief**

103. The Trust re-alleges and incorporates by reference the allegations in the above paragraphs as if fully restated here.

104. The Court has authority to grant injunctive relief under 11 U.S.C. § 105 for any purpose necessary and appropriate to accomplish the ends of the Bankruptcy Code, including the

implementation and administration of the Debtor's Plan.

105. There are significant grounds justifying the grant of injunctive relief staying Peyton's and Aisling Chem's actions that interfere with the Trust's administration and implementation of the Plan.

106. Following the termination of Peyton's representation, Peyton has disclosed privileged and confidential attorney-client communications that are not even relevant to matters before the court, namely the numerous disclosures made in connection with Peyton's motion for "clarification" of the status of his representation of the Trust.

107. Peyton's disclosures of attorney-client communications are unethical, dishonest and made for the improper purpose of deflecting from Peyton's conduct by creating confusion and seeking to undermining the Trustee's position and by extension the Trust's ability to implement the Plan.

108. Violation of attorney-client confidentiality results in immediate, irreparable harm upon disclosure.

109. Peyton's disclosures are particularly egregious because the Trust is currently trying to sell the Mexican Properties.

110. An order directing Peyton and Aisling Chem to cease and desist from any further disclosures of attorney-client communications outside this Court, and requiring attorney-client communications to be filed under seal in proceedings and matters before the Court, will avoid further unnecessary distraction from the sale of the Mexican Properties.

111. Injunctive relief concerning attorney-client communications should be extended to Aisling Chem because it is affiliated with Peyton due its purported management by employees of Peyton & Associates.

112. Peyton or Aisling Chem will not be harmed by an order requiring privileged and

confidential communications under seal because it will not prevent them from presenting their positions and will promote Peyton's adherence to their ongoing ethical obligation of professional secrecy.

113. Following the termination of Peyton's representation, Peyton acted in concert with Aisling Chem in an attempt to have the Trustee's appointment as foreign trustee in the Mexican bankruptcy proceeding revoked.

114. The Trustee has commenced this proceeding to resolve the disputes underlying Peyton's and Aisling Chem's efforts to interfere with the Trust's implementation of the Plan.

115. By making filings in multiple venues, Peyton/Aisling Chem have also increased the risk of conflicting decisions, confusion and resulting prejudice to the Trust and its beneficiaries.

116. A central purpose of bankruptcy proceedings is to have issues relating to property rights determined in a single venue, the bankruptcy court, through an expeditious and cost-effective process.

117. The Plan will be carried out more effectively if the other actions and proceedings are temporarily restrained, at least until the central issues of Peyton's and Aisling Chem's asserted rights have been determined.

118. Peyton and Aisling Chem will not be harmed by a temporary stay because the prompt determination of their claims will clarify their position and promote the implementation of the Debtor's plan.

119. The Trust reserves the right to seek such additional relief against Peyton and Aisling Chem as would be necessary or proper.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff NJS Liquidating Trust, by its liquidating Trustee, Christopher Stroebel, respectfully requests that this Court grant judgment as follows:

A. A declaration that the Trust properly terminated the representation of Dennis John Peyton and Peyton & Associates, and has no further obligation to Dennis John Peyton or Peyton & Associates;

B. A declaration that Aisling Chem's claim, and the lien interest asserted by Aisling Chem, S. de R.L. de C.V.in the Mexican Properties, are null, void and of no effect;

C. An injunction under 11 U.S.C. §§ 105: (1) directing Defendants Dennis John Peyton, Peyton & Associates and Aisling Chem, S. de R.L. de C.V. to cease and desist from any further disclosures of attorney-client communications outside this Court, and requiring attorney-client communications to be filed under seal in proceedings and matters before the Court; and (2) staying further acts by Defendants to enforce their claims, directly or indirectly, or otherwise interfering with the administration of the Trust, while this proceeding is pending;

D. For costs and attorneys' fees; and

E. For such other and further relief as the Court deems necessary or proper.

Respectfully submitted on August 8, 2025.

**ROSENWEIN LAW GROUP**

*<u>/s/ Thomas D. Rosenwein</u>*
Thomas D. Rosenwein
ARDC No. 2391597

105 W. Madison St. Suite 2300
Chicago, Illinois 60602-4647
t. (312) 792-1957
trosenwein@gmail.com

*Attorney for Plaintiff NJS Liquidating Trust*

**OF COUNSEL:**

**STROEBEL LAW, LLC**

*/s/ Christopher Stroebel*
Christopher Stroebel
IL ARDC No. 6238183
WI State Bar No. 1035182

MAILING ADDRESS:
30 W. Mifflin Street, Suite 1001
Madison, WI 53703
t. (608) 441-8100
f. (608) 257-2722
christopher.stroebel@stroeblaw.com