**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case no. 08-28743 |
| | ) | |
| NANCY JEAN SERWIN, | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | Honorable Deborah L. Thorne |
| | ) | |
| NJS LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 25-00253 |
| v. | ) | |
| | ) | |
| DENNIS JOHN PEYTON, | ) | |
| PEYTON & ASSOCIATES, and | ) | |
| AISLING CHEM INC., S. DE R.L. DE C.V., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This is a protracted case involving Mexican property law in which this court is no expert. The filings are voluminous, and the facts are long and complex. At the outset, the court notes that the Debtor's plan likely should have never been confirmed, a final decree never issued, and the case never closed. Despite what the confirmation order says, this plan was never fully consummated, and the parties should have told the court as much. They failed to and now ask this court to fix their nearly 20-year-old mistake. The Trust that was created to sell the Debtor's property asks this court to grant it declaratory and injunctive relief. For the reasons that will be made clear below, this court does not have jurisdiction. The adversary proceeding will be dismissed, and the case closed.

**BACKGROUND**

Nancy Jean Serwin filed her chapter 11 petition on October 24, 2008. She filed her First Amended Plan on November 11, 2009, which was confirmed on March 11, 2010 (Bankr.

Pro. Dkt. 51 and 94). Ms. Serwin's assets were primarily two properties in Akumal, Mexico: a $2,000,000 seaside property and a $650,000 adjacent garden lot (the Mexican Properties). The plan established a liquidating trust "for the benefit of holders of Allowed Claims," where Ms. Serwin was to transfer and assign "her beneficial interests[1] in the land trust or trusts holding the Mexican Properties to the Liquidating Trust." (First Am. Plan, Dkt. 67 at §§ 1.26, 5.8). The court issued a final decree on December 2, 2010, noting that "the First Amended Plan of Reorganization ha[d] been substantially consummated." (Dkt. 114). Ms. Serwin received her discharge on December 3, 2010 (Dkt. 116), and her case was closed on December 6, 2010 (Dkt. 117).

In 2017,[2] Christopher Stroebel, the Trust's trustee, engaged Dennis Peyton and his law firm, Peyton & Associates, to take the "steps necessary to investigate, administer and sell the Mexican Properties." (Mot. to Enforce the Debtor's First Am. Chapter 11 Plan & Liquidating Trust Agreement, Dkt. 138 at ¶ 11). On February 6, 2025, Mr. Stroebel terminated Mr. Peyton after Mr. Peyton allegedly "repudiated and materially breached the terms of his and his firm's representation of the Trust" by demanding payment of $92,567.41 and abusing powers of attorney granted to him by Nancy Serwin in 2022. (Trustee's Obj. to Mot. to Confirm, Dkt. 217 at 9, 11–12, 15).

---

[1] Ms. Serwin holds a beneficial interest because, under Mexican law, foreigners cannot own "real property . . . located within 100 kilometers of the country's borders and coastline." (Mot. to Enforce the Debtor's First Am. Chapter 11 Plan and Liquidating Trust Agreement, Dkt. 138 at 4 (citing Constitucion Politica de los Estado Unidas Mexicanos, art. 27)). At the time the plan was confirmed, and to date, "the beneficial interest in the properties remain titled in the Debtor's name," *id.*, "[e]ven though the Plan requires the transfer of the Debtor's beneficial interests in the Mexican Properties to the Trust." (Adv. Pro., Dkt. 1 at ¶ 29). This has caused significant complications. *Id.*

[2] The court has no idea what happened in the seven years between the case being closed and subsequently reopened. The case was reopened to appoint a new trustee for the Trust and to enforce the Debtor's plan. *See* Mot. to Reopen Chapter 11 Case, Dkt 118; Mot. to Enforce the Debtor's First Am. Chapter 11 Plan and Liquidating Trust Agreement, Dkt. 138.

On August 8, 2025, Mr. Stroebel and the Trust filed an adversary proceeding against Mr. Peyton, Peyton & Associates, and Aisling Chem Inc.[3] (Aisling Chem) seeking declaratory judgment "to resolve controversies affecting the implementation of the Plan" and injunctive relief "to prevent further interference by Peyton and Aisling Chem in the implementation and administration of the Plan." (Adv. Compl., Dkt 1 at ¶ 9). Mr. Stroebel alleges that in 2018 and 2019, Mr. Peyton induced the Trust "to enter into a fake loan transaction" with Aisling Chem "purely for Peyton's benefit" to secure "payment of Peyton & Associates' fees." *Id.* at ¶ 2.[4] Mr. Stroebel further alleges that Aisling Chem's representatives are also Peyton & Associates employees, which Mr. Peyton never disclosed. *Id.* at ¶ 23.

Mr. Stroebel eventually hired independent counsel (Decl. of Miguel Romo, Dkt. 29) to review the Mexican bankruptcy proceeding and allegedly discovered "significant improprieties by Peyton," including abusing a power of attorney the Debtor granted him to "designate an employee of Peyton & Associates as the Debtor's agent for receiving notice in the Mexican bankruptcy proceeding," causing the Debtor to not receive notice of the Mexican bankruptcy proceeding,[5] failing to inform the Mr. Stroebel of a proposed public auction for the Mexican Properties, and falsely representing to the Mexican court that all parties agreed that the Trust owed Aisling Chem $200,000. (Adv. Compl., Dkt. 1 at ¶¶ 57–60).[6]

---

[3] Aisling Chem is "a limited liability company represented by Jennifer Angélica López Gómez" that the Trust alleges is an employee of Mr. Peyton. (Answer, Dkt. 18, Ex. B at 14; Adv. Compl, Dkt. 1 at 2).
[4] Mr. Stroebel states that the terms of Mr. Peyton's representation were such that Peyton & Associates would not be paid until the sale of Mexican Properties were successful. Mr. Peyton also agreed to pay legal expenses, and "[t]he Trust would not have continued with Peyton but for Peyton & Associates' agreement to cover legal expenses." (Adv. Compl., Dkt 1 at ¶ 35).
[5] On November 22, 2022, Mr. Peyton's firm filed an ancillary bankruptcy proceeding for recognition of the U.S. Bankruptcy Proceeding in the First District Court for Commercial Bankruptcy Matters in Mexico City on behalf of the Trust. (Answer, Dkt. 18, Ex. B).
[6] The Mexican Court recognized Aisling Chem as a legitimate creditor entitled to distribution from the sale of the Mexican Properties. (Resp. in Opp'n to Mot. to Dismiss, Dkt. 28 at 10–11).

Mr. Stroebel now seeks declaratory judgment that he terminated Peyton & Associates on February 5, 2025 after Mr. Peyton's "material breach and repudiation of the terms of [his firm's] representation of the Trust" and has no further obligation to Mr. Peyton and his firm. *Id.* at ¶ 91. Additionally, Mr. Stroebel seeks declaratory judgment against Aisling Chem finding that "the loan transaction, including the debt and lien interest asserted by Aisling Chem in the Mexican Properties, is null, void and of no effect" because Mr. Peyton and Aisling Chem conspired "to interfere with the administration of the Trust in furtherance of their fraudulent loan scheme. Alternatively, Peyton assisted or acted as the agent for Aisling Chem, or otherwise used Aisling Chem as an instrumentality, in interfering with the administration of the Trust." *Id.* at 16. Finally, Mr. Stroebel seeks injunctive relief under 11 U.S.C. § 105 because Mr. Peyton has disclosed privileged attorney-client communications "in connection with Peyton's motion for 'clarification' of the status of his representation of the Trust." *Id.* at 17. Mr. Stroebel also alleges that Mr. Peyton and Aisling Chem have acted in concert "to have the Trustee's appointment as foreign trustee in the Mexican bankruptcy proceeding revoked" and filing in multiple venues, increasing "the risk of conflicting decisions, confusion and resulting prejudice to the Trust and its beneficiaries." *Id.* at 18.

Mr. Peyton subsequently filed a Motion to Dismiss Adversary Proceeding (Motion to Dismiss) for lack of subject matter jurisdiction. (Dkt. 26). He argues there is no subject matter jurisdiction because "the acts complained of did not arise in connection with any ongoing bankruptcy administration in this Court." *Id.* at 4. Instead, the acts arose "in connection with Mexican proceedings concerning Mexican real estate, pursued under Mexican law and through relief that the Trustee himself sought and obtained in Mexico." *Id.* According to Mr. Peyton, the allegations regarding the fraudulent loan transaction with

Aisling Chem, Mr. Peyton's abuse of the power of attorney, and his false representations to the Mexican Court do not have "anything to do with bankruptcy law or this Court" because "interference with the Trust's administration is not a bankruptcy law matter that gives rise to § 1334(b) jurisdiction, nor does it relate to 'implementation' of the 16-year-old Plan." *Id.* at 7. The Motion to Dismiss further argues that this court does not have "arising under," "arising in," or "related to" jurisdiction. *Id.* at 9–10.

## DISCUSSION

### I. Jurisdiction in the Bankruptcy Court

Section 1334(b) grants original, but not exclusive, jurisdiction to district courts over "all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). District courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Thus, a bankruptcy court's jurisdiction involves four situations: (1) the original bankruptcy proceeding itself, (2) proceedings "arising under"; (3) proceedings "arising in"; and (4) proceedings "related to" a bankruptcy case. *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 213–14 (7th Cir. 1996).

Post-confirmation jurisdiction is narrower than pre-confirmation jurisdiction. *In re Kmart Corp*., 359 B.R. 189, 195 (Bankr. N.D. Ill. 2005). Post-confirmation, a bankruptcy court retains subject matter jurisdiction "only to the extent necessary to interpret or implement the plan." *Globaleyes Telecomms., Inc. v. Verizon N., Inc.*, 425 B.R. 481, 497 (S.D. Ill. 2010). This can include attempts "to protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation." *In re Castle Home Builders, Inc.*, 520 B.R. 98, 101 (Bankr. N.D. Ill. 2014) (quoting *In re Kmart Corp.*, 359 B.R. at 195).

**a. Arising In Jurisdiction**

Arising in jurisdiction "encompasses issues relating to administration of bankruptcy matters that arise only in bankruptcy cases." *Schwinn Cycling & Fitness Inc. v. Benonis (In re Schwinn Bicycle Co.)*, 210 B.R. 747, 754 (Bankr. N.D. Ill.), *aff'd sub nom. Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R. 790 (N.D. Ill. 1997). A claim "'arising in' bankruptcy include[s] . . . 'administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.'" *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir. 2010) (quoting 1 Collier on Bankruptcy ¶ 3.01[4][c][iv] at 3–27 (15th ed. rev. 2008)). A proceeding "arises in" bankruptcy only if it has "no existence outside of the bankruptcy." *Id.* at 719 (quoting *Stoe v. Flaherty,* 436 F.3d 209, 216 (3d Cir. 2006)).

**b. Arising Under Jurisdiction**

Arising under jurisdiction "describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Schwinn Bicycle Co.*, 210 B.R. at 754. Claims arising under the Code "depend on a right 'created or determined by a statutory provision of title 11.'" *In re Repository Techs., Inc.*, 601 F.3d at 719 (quoting *CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Comm. Loan Corp.),* 363 B.R. 559, 565 (Bankr. N.D. Ill. 2007)).

**c. Related To Jurisdiction**

The Seventh Circuit's standard for "related to" jurisdiction post-confirmation is whether the dispute "affects the amount of property available for distribution or the allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). "[I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction." *Id.* Post-confirmation jurisdiction turns not on the mere connection between

the litigation and the bankruptcy case, but on whether resolution of the dispute will have a concrete effect on the implementation of the confirmed plan.

**II. This Court Does Not Have Jurisdiction.**

This court finds that it does not have arising in, arising under, or related to jurisdiction. As a preliminary matter, this court does not have jurisdiction over Aisling Chem because it has not received notice of the adversary proceeding and has never appeared before this court.[7] The court does not have jurisdiction over a party that has not been properly served. *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010). As such, the court cannot provide any relief as to Aisling Chem and will not address any arguments related to jurisdiction over Aisling Chem.

**a. This Court Does Not Have Arising In Jurisdiction.**

When it comes to arising in jurisdiction, the dispute between the Trust and Mr. Peyton is not "inextricably bound to the bankruptcy proceeding." *In re Repository Techs., Inc.*, 601 F.3d at 721 (quoting *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006)). A proceeding "arises in" bankruptcy *only if* it has "no existence outside of the bankruptcy." *Id.* at 719. The Trust hired Mr. Peyton and his firm seven years after Ms. Serwin's bankruptcy case closed. *See* Bankr. Pro., Dkt. 117; Mot. to Enforce, Dkt. 138. No one in the case ever filed an application to employ Mr. Peyton and his firm under section 327 of the Code.[8] The Trust's decision to employ or terminate Mr. Peyton and his firm exists

[7] Aisling Chem is a Mexican LLC and must be served under the Hague Convention. The Trust has attempted to serve Aisling Chem twice, and the Mexican Central Authority has rejected that service "because the date of status hearing set as part of the issuance of the alias summons by this Court was set before service could be completed." (Mot. to Approve Service of Process Without Notice of Status Hr'g, Dkt. 35 at 2). The Trust asked this court for permission to serve notice on Aisling Chem without notice of the status hearing. *Id.* The court does not know the status of service on Aisling Chem.

[8] "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an

completely outside of bankruptcy, and this court does not have the authority to declare that he has been properly terminated.

Likewise, the court has no jurisdiction to direct Mr. Peyton "to cease and desist from any further disclosures of attorney-client communications outside this Court." (Adv. Compl. at ¶ 110, Dkt 1). Mr. Peyton's alleged actions exist solely outside the bankruptcy proceeding, and this court does not have jurisdiction to enter injunctive relief.

**b. This Court Does Not Have Arising Under Jurisdiction.**

Claims arising under the Code "depend on a right 'created or determined by a statutory provision of title 11.'" *In re Repository Techs., Inc.*, 601 F.3d at 719. In his Motion to Dismiss, Mr. Peyton rightfully argues that the Trust has not made a claim "under any substantive provision of title 11." (Dkt. 26 at 10). Indeed, the Trust invokes only Section 105,[9] arguing that "[t]he Court has authority to grant injunctive relief under 11 U.S.C. § 105 for any purpose necessary and appropriate to accomplish the ends of the Bankruptcy Code, including the implementation and administration of the Debtor's Plan." (Adv. Compl., Dkt. 1 at ¶ 104).

Section 105 is not a catch all provision for jurisdiction. "Section 105 does not provide a jurisdictional basis, but provides the "scope and forms of relief the court may order in an action in which it has jurisdiction." *Zerand-Bernal Grp. v. Cox (In re Cary Metal Prods., Inc.)*, 158 B.R. 459, 465 (N.D. Ill. 1993), *aff'd*, 23 F.3d 159 (7th Cir. 1994) (quoting *In re American Hardwoods, Inc.,* 885 F.2d 621, 624 (9th Cir. 1989)). The Seventh Circuit has noted that

interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

[9] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

"[a]lthough expansively phrased, section 105(a) . . . in no sense constitutes a roving commission to do equity. Instead, the equitable discretion conferred upon the bankruptcy court by section 105(a) is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code." *Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 935–36 (7th Cir. 2007) (quoting *In re Ludlow Hosp. Soc., Inc.,* 124 F.3d 22, 27 (1st Cir. 1997)). The Trust would have this court invoke its equitable powers to provide declaratory and injunctive relief against Mr. Peyton to aid in "implementation and administration of the Debtor's Plan." (Adv. Compl., Dkt. 1 at ¶ 104).

While true that that the Debtor's plan included a broad retention-of-jurisdiction clause to "supervise the implementation of th[e] Plan" (Bankr. Pro., First Modified Plan at 15, Dkt. 67), a plan's retention-of-jurisdiction clause itself cannot confer subject matter jurisdiction on a court that does not otherwise exist. *See Zerand-Bernal Grp. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) ("A court cannot write its own jurisdictional ticket."). Mr. Stroebel argues that staying Mr. Peyton from disclosing privileged materials will help the Trust sell the Mexican Properties. Mr. Stroebel vaguely states that Mr. Peyton "disclosed privileged and confidential attorney-client communications . . . not relevant to matters before the court, namely the numerous disclosures made in connection with Peyton's motion for 'clarification' of the status of his representation of the Trust." (Adv. Compl., Dkt. 1 at ¶ 104). But Mr. Stroebel has not pointed to anything specific on the docket that violates attorney-client privilege, and the court is not inclined to sift through the numerous filings to figure out what disclosures Mr. Stroebel believes were privileged.

**c. This Court Does Not Have Related To Jurisdiction.**

Where proceedings will alter the amount of property available for distribution or the allocation of that property among creditors, the bankruptcy court retains "related to" jurisdiction notwithstanding confirmation. *In re Mem'l Ests., Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991). As articulated in *Zerand*, related to jurisdiction primarily "encompass tort, contract, and other legal claims by and against the debtor."[10] 23 F.3d at 161. Related to jurisdiction's "secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate." *Id.* at 161–62 (citing *National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 709 (7th Cir.1994); *In re Turner,* 724 F.2d 338, 341 (2d Cir.1983)). This court does not have related to jurisdiction because neither purpose is served in this adversary proceeding.

Mr. Stroebel's adversary proceeding is not against the Debtor, and, in fact, the Debtor is not even a party in this action. The outcome of the proceeding will also in no way affect the amount of property in the estate in part because there is no estate.[11] More importantly, the court is not persuaded by Mr. Stroebel's argument that declaratory and injunctive relief against Mr. Peyton will affect the amount of distribution to creditors. Mr. Stroebel argues that "the determination that Peyton's and Aisling Chem's claims are unenforceable or reduced will increase the distributions to unsecured creditors." (Resp. in Opp'n to Mot. to Dismiss at 14, Dkt. 28). But this court has not been asked to determine whether Mr. Peyton's

[10] These are "claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum." *Zerand*, 23 F.3d at 161 (citing *In re Xonics,* 813 F.2d 127, 131 (7th Cir. 1987)).

[11] "Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval . . . Formerly a ward of the court, the debtor is emancipated by the plan of reorganization." *Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir. 1991).

claim is enforceable or could be reduced. Mr. Stroebel has only asked this court to find that the Trust terminated Mr. Peyton, to direct him to stop disclosing privileged information, and stay any enforcement action of his claim while this adversary is proceeding. (Adv. Compl., Dkt. 1 at 19). None of these requests for relief relate to whether Mr. Peyton's claim is enforceable or reducible, and none affect the amount of distribution to creditors.

Further, Mr. Peyton has not even filed a proof of claim in this court (or the Mexican Bankruptcy Court, for that matter). Mr. Peyton has only filed a document he apparently created himself calculating what believes he is owed. (Bankr. Pro., Dkt 252). Without a proof of claim filed in this court, there is no subject matter jurisdiction. *Ex parte Christy*, 44 U.S. 292, 301 (1844) ("[T]here is no jurisdiction whatever granted by this section, so far as persons are concerned, to a creditor who does not claim under the bankruptcy."). There is no claim for this court to find enforceable or reducible.

**d. Mr. Stroebel's Complaint has Nothing to do with Plan Implementation.**

Mr. Stroebel's last refuge for related to jurisdiction is plan implementation. "'[R]elated to' jurisdiction can extend to post-confirmation disputes . . . the exercise of such jurisdiction is appropriate 'only to ensure that reorganization plans are implemented and to protect estate assets devoted to implement the confirmed plan.'" *Cytomedix, Inc. v. Safeblood Techs., Inc.*, No. 02 C 4773, 2003 WL 403156, at *3 (N.D. Ill. Feb. 21, 2003) (citing *Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.*, 243 F. Supp. 2d 786, 790 (N.D. Ill. 2003)). Mr. Stroebel says the "[t]he Trust is actively seeking to implement the Plan by obtaining possession of and selling the Mexican Properties," and to do that, he needs "this Court[] . . . to resolve the ongoing interference with the Trust's implementation of the Plan." (Resp. in Opp'n to Mot. to

Dismiss, Dkt. 28 at 18–20). This interference apparently includes Mr. Peyton "manipulating events in the Mexican bankruptcy case to get paid." *Id.* at 19.

Whatever is going on with the Trust and the Mexican Properties, it appears to be an issue that can only be resolved in Mexico. At a hearing held on August 26, 2026, Mr. Stroebel told this court,

> Resolving this has to happen in Mexico where we ideally get possession of the property . . . The Debtor's attorney in Mexico worked with a corrupt notary public in Mexico to transfer the beneficial interest to a third party . . . This notary was scamming foreigners out of their properties. We need to first get possession. There's a Trustee in the Mexican ancillary case who tried to auction the property and there were no bids. The issue is that no one can get in. If we can't get possession, then we'll have to sell it as is.

How Mr. Stroebel expects this court to assist him in implementing the plan when implementing the plan requires resolution in Mexico is a mystery. Whatever is happening with Mr. Peyton and Aisling Chem in Mexico needs to be dealt with in Mexico. This court does not have the jurisdiction to resolve Mr. Stroebel's issues. While the court sympathizes with the difficulty of this case, a party "may not come running to the bankruptcy judge every time something unpleasant happens." *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991). Mr. Stroebel and the Trust are free to file in the District Court or Mexican court.

**CONCLUSION**

The court finds that it does not have jurisdiction to issue any declaratory or injunctive relief. The adversary proceeding is dismissed for lack of jurisdiction. The court will issue a separate order closing the case.

Dated: September 22, 2026

Honorable Deborah L. Thorne
United States Bankruptcy Judge